**D.F. and D.F., on behalf of N.F.,**
**Plaintiff–Appellee,**

**v.**

**RAMAPO CENTRAL SCHOOL DISTRICT, Defendant–Appellant.**

**Dockets Nos. 04–6170–CV(L),**
**04–6375–CV(XAP).**

United States Court of Appeals,
Second Circuit.

Argued: Nov. 9, 2005.

Decided: Nov. 23, 2005.

Carl L. Wanderman, Montebello, N.Y., for Defendant–Appellant.

Gary S. Mayerson, New York, N.Y., for Plaintiff–Appellee.

Before: CALABRESI, B.D. PARKER, and WESLEY, Circuit Judges.

CALABRESI, Circuit Judge.

Defendant–Appellant Ramapo Central School District ("the District") appeals the district court's entry of summary judgment in favor of Plaintiffs–Appellees D.F. and D.F. ("Appellees") who brought suit on behalf of their son, N.F., under the Individuals with Disabilities Education Act ("the IDEA"), 20 U.S.C. § 1400 *et seq* .. Appellees claimed that their son's Individualized Education Plan ("IEP") was not reasonably calculated to give him a "free appropriate public education" ("FAPE") because it did not provide for Applied Behavior Analysis ("ABA") therapy at home.

For the 2002–2003 school year, N.F., who was diagnosed at an early age with severe autism and associated conditions, was enrolled at the District's special preschool placement program, Prime Time for Kids ("Prime Time"), where he received, *inter alia*, full-day ABA therapy. Under the IEP developed by the District, however, the District did not make provisions for N.F. to receive additional ABA therapy at home. Appellees found this unsatisfactory and sought an impartial hearing to challenge the sufficiency of their son's educational plan. After a full due process hearing, an Impartial Hearing Officer ("IHO") decided that the District had satisfied its legal obligations to provide a FAPE to N.F.. The State Review Officer ("SRO") agreed. Appellees then raised their claims in district court. Rejecting the SRO's finding that N.F. had made "meaningful progress," the district court (Robinson, *J.*) granted summary judgment to Appellees, and ordered that N.F. receive at least 10 hours of ABA therapy at home each week.

On appeal, the District argues that the district court wrongly substituted its own judgment for that of the SRO, whose administrative ruling was owed, the District contends, substantial deference on questions of educational methodology and practice. Because we remand the case for further consideration of a putative error seemingly committed by both the SRO and the district court, we need not decide whether the district court paid sufficient deference to the SRO's decision.

BACKGROUND

Born November 25, 1998, N.F. was diagnosed at an early age with autistic disorder and related conditions. Shortly after N.F. began the 2002–2003 school year, the District's Committee on Preschool Education ("the Committee") convened a session on October 30, 2002 to consider N.F.'s special needs and to develop an IEP tailored to his circumstances. Pursuant to this plan, which was developed only after obtaining input from Appellees, N.F. was placed at Prime Time, a non-public, full-day preschool, where N.F. was enrolled in a class of six students with two full-time teachers, one of whom was dedicated exclusively to N.F.. Prime Time also provided supplemental parent and student programs—including ABA therapy—which the parties agree were generally suitable for N.F.. At the October 30th meeting, the Committee agreed to review N.F.'s needs periodically, which it next did on January 22, 2003,

producing, on that date, a revised IEP that took account of additional recommendations by Prime Time's staff and teachers.

Although Appellees acknowledged (and continue to admit) that enrollment at Prime Time is "an appropriate component of [N.F.'s] educational program," they requested, as early as September 2002, that N.F. receive at-home ABA therapy to supplement the services he receives during the school day. At the time, this request was based on the recommendation of Dr. Cecelia McCarton, a private specialist who had seen N.F. on two occasions in late August 2002. In her report, Dr. McCarton suggested, *inter alia,* that N.F. receive "ABA therapy for at least 20 hours a week at home." This report was submitted to the District on September 18, 2002; in October 2002, N.F.'s parents also met with the Committee to discuss Dr. McCarton's recommendations. Consequently, at the October 30th meeting, the Committee crafted an IEP that included some but not all of Dr. McCarton's recommendations. N.F.'s parents were apparently not satisfied, and on December 18, 2002, they requested an impartial hearing to assess whether their son's educational plan satisfied the IDEA's statutory requirement that disabled students receive a FAPE.

A full due process hearing was conducted before an IHO on April 15, 2003 and May 9, 2003. After considering submitted documents and the testimony of four witnesses—Ellen Weiner, a District administrator; Lisa Delaney, the ABA program director at Prime Time; Dr. McCarton; and N.F.'s mother—the IHO concluded that at-home ABA therapy was not needed to ensure a FAPE, and therefore that the District had satisfied its obligations under federal law.

The SRO affirmed the IHO decision on June 17, 2003, deciding that Appellees' procedural and substantive challenges under the IDEA were without merit. In so doing, the SRO emphasized that the "Prime Time special education teacher was able to elicit minimal progress in pre-academic and study skills, communication, transitioning, cooperation, reduced aggression, and reinforced effectiveness." Stressing the severity of N.F.'s condition, the SRO concluded that N.F.'s progress was "nothing short of meaningful," and accordingly dismissed the Appellees' IDEA claims.

Appellees challenged the SRO's decision in federal district court, and both parties promptly moved for summary judgment. After oral argument, during which District Court Judge Stephen C. Robinson made several inquiries as to whether N.F. had made "meaningful progress," the district court granted summary judgment to Appellees. Exclusively addressing Appellees' substantive challenge,[1] the court found "significant evidence in the record that N.F. failed to make meaningful progress through the execution of his IEPs." Finding that N.F. had been denied a FAPE as a consequence, the court ordered the District to "provide a minimum of ten hours of one-on-one, at-home ABA therapy to N.F."

The District then appealed the district court's decision to us.

## DISCUSSION

■■■ We review *de novo* the district court's decision to grant summary judgment. *See, e.g., Sherman v. Mamaroneck Union Free Sch. Dist.,* 340 F.3d 87, 92 (2d Cir.2003). "Whether the district court correctly applied the IDEA's statutory and

---

1. The district court expressly did not consider the procedural IDEA challenge raised by N.F.'s parents.

regulatory provisions to the facts of a particular case is a mixed question of law and fact, which we also review *de novo.*" *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 191 (2d Cir.2005). Federal courts reviewing administrative decisions must give "due weight" to the administrative proceedings and remain "mindful that the judiciary generally 'lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir.1998) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206, 208, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)). For this reason, the Supreme Court, *see Rowley*, 458 U.S. at 204, 102 S.Ct. 3034, and our circuit, *see Walczak*, 142 F.3d at 129, have interpreted the IDEA as strictly limiting judicial review of state administrative decisions.

■ For a state to be eligible for federal funding under the IDEA, it must develop educational plans that are "reasonably calculated" to ensure that all children with disabilities receive a "free appropriate public education." 20 U.S.C. § 1412(a)(1); *Rowley*, 458 U.S. at 207, 102 S.Ct. 3034. To meet these requirements, a school district must provide each eligible student with "special education and related services" designed to serve the student's needs. 20 U.S.C. § 1401(9). Such services must be administered according to an IEP, "which school districts must implement each year for each student with a disability." *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379 (2d Cir.2003). Moreover, this court has held that "for an IEP to be reasonably calculated to enable the child to receive educational benefits, it must be likely to produce progress, not regression." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 151 (2d Cir.2002). A valid IEP should provide for the opportunity for more than "trivial advancement," *Mrs. B.*

*v. Milford Bd. of Educ.*, 103 F.3d 1114, 1121 (2d Cir.1997), such that "the door of public education" is "opened for a disabled child in a 'meaningful' way." *Walczak*, 142 F.3d at 130 (2d Cir.1998) (quoting *Rowley*, 458 U.S. at 192, 102 S.Ct. 3034).

In the case before us, the issue of whether N.F. had made meaningful progress as a student at Prime Time figured prominently in the decisions of *both* the district court and the SRO. Both adjudicators seemingly assumed that it was proper to consider "retrospective" evidence of N.F.'s experience under the IEPs developed for him in October 2002 and January 2003 in determining whether those IEPs were "reasonably calculated" to confer a meaningful educational benefit. This court, however, has not established whether, and to what extent, retrospective evidence of a student's progress—or the lack thereof—should be considered in determining the validity of an IEP in which the student is currently enrolled.

Three other circuits—the First, Third, and Ninth—have squarely addressed these questions. All three have held that inquiry into whether an IEP is valid is a necessarily *prospective* analysis, and that consideration of proof of whether an IEP meaningfully contributed to the child's education is not altogether proper. For example, in *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 992 (1st Cir.1990), the First Circuit stated:

> Moreover, appellants' argument misperceives the focus of an inquiry under [IDEA]: the issue is not whether the IEP was prescient enough to achieve perfect academic results, but whether it was "reasonably calculated" to provide an "appropriate" education as defined in federal and state law. This concept has decretory significance in two respects. For one thing, actions of school systems cannot, as appellants would have it, be

judged exclusively in hindsight. An IEP is a snapshot, not a retrospective. In striving for "appropriateness," an IEP must take into account what was, and was not, objectively reasonable when the snapshot was taken, that is, at the time the IEP was promulgated.

*Id.* at 992 (internal quotation marks and citations omitted). *See also Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 530 (3d Cir.1995) ("In any event, appropriateness is judged prospectively so that any lack of progress under a particular IEP, assuming *arguendo* that there was no progress, does not render that IEP inappropriate."); *Adams v. Oregon*, 195 F.3d 1141, 1149 (9th Cir.1999) ("Instead of asking whether the [program] was adequate in light of the [child's] progress, the district court should have asked the more pertinent question of whether the [program] was appropriately designed and implemented so as to convey . . . a meaningful benefit. We do not judge [a program] in hindsight; rather, we look to the [program's] goals and goal achieving methods at the time the plan was implemented and ask whether these methods were reasonably calculated to confer . . . a meaningful benefit."). Several district courts of our circuit, while noting that we have not decided the issue, have followed the approach of our sister circuits.[2]

■ Notwithstanding the approach of the First, Third and Ninth circuits—and the apparent decision of several district courts in this circuit to follow that approach—this court has not, as yet, decided if it is error to consider retrospective evidence in assessing the substantive validity of an IEP. As a consequence, we cannot determine at this stage whether the approach taken by *both* the district court and the SRO was improper. Since neither the parties nor the district court below have considered this question, we remand the case to the district court so that it has an opportunity, after full briefing and arguments, to assess the merits of the issue in the first instance.[3]

2. *See, e.g., J.R. v. Bd. of Educ. of City of Rye Sch. Dist.*, 345 F.Supp.2d 386, 395 (S.D.N.Y. 2004) ("[T]he IHO's determination that the IEP at issue is reasonably calculated to enable [the student] to receive educational benefits . . . is necessarily prospective in nature; we therefore must not engage in Monday-morning quarterbacking guided by our knowledge of [the child's] subsequent progress at [the child's school], but rather consider the propriety of the IEP with respect to the likelihood that it would benefit [the child] at the time it was devised." (internal citations and quotation marks omitted)); *Antonaccio v. Bd. of Educ. of Arlington Cent. Sch. Dist.*, 281 F.Supp.2d 710, 724 (S.D.N.Y.2003) ("[I]t was wrong to consider [retrospective] information because it does not relate to whether the IEP was reasonably calculated to benefit [the disabled student] at the time the [Committee] devised the IEP. Though the Second Circuit has not addressed this precise issue, other courts have found that "appropriateness is judged prospectively so that any lack of progress under a particular IEP, assuming *arguendo* that there was no progress, does not render that IEP inappropriate." Conversely, *ex post* evidence of a student's progress does not render an IEP appropriate. Thus, whether the [instant] IEP was reasonably calculated to confer educational benefits on [the student] must be evaluated as of the time the [Committee] devised the IEP." (citation omitted)).

3. For the purposes of clarifying the law of our circuit, there may be value in distinguishing between IDEA claims that dispute the validity of a *proposed* IEP, on the one hand, and suits that question whether an *existing* IEP should have been modified in light of changed circumstances, new information, or proof of failure. *Compare, e.g., Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160 (2d Cir.2004) (describing the safeguards available in New York to challenge the sufficiency of an *proposed* IEP) *with Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 383 (2d Cir.2003) (suggesting that grades and test scores qualify as objective evidence that may be used to evaluate the adequacy of an IEP that has purportedly failed to address a prior IEP's alleged shortcomings).

Because we remand the case for more developed briefing and further consideration of this issue, we need not, and therefore do not, decide whether the district court paid sufficient deference to the SRO's decision.[4]

For the foregoing reasons, we VACATE the judgment below and REMAND the case to the district court for further proceedings consistent with this decision.

---

4. In this respect, we note in passing our recent decision in *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186 (2d Cir.2005), which emphasized that district courts should pay substantial deference to administrative judgments implicating educational policies and practices.