SUMMARY ORDER
Plaintiffs K.H. and E.H. appeal an award of summary judgment in favor of defendants (collectively, the “School District”), whom plaintiffs allege failed to provide their son C.H. with an appropriate public education and discriminated against him based on disability, violating the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq.; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and 42 U.S.C. § 1983. We assume familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision.
1. Timeliness
Plaintiffs claim the district court erred in rejecting as untimely their IDEA claims based on the 2001-02 and 2002-03 school years. They do not dispute that those claims accrued no later than September 5, 2002, or that they commenced this action by requesting a due process hearing on May 10, 2004. Rather, they argue that the applicable time limit is not one year, as the district court concluded, but four years, under the federal “catch-all” statute, 28 U.S.C. § 1658(a). In the alternative, they assert that the School District failed to advise them of their rights, so that a three-year limit applies. They also argue that the School District misled them as to the applicable limit, and is therefore es-topped from arguing that their claims are untimely.
Because plaintiffs’ argument urging application of 28 U.S.C. § 1658 was not raised below, we would generally treat it as waived. See Baker v. Dorfman, 239 F.3d 415, 420 (2d Cir.2000). Even if plaintiffs could clear this procedural hurdle, however, their argument fails on the merits. As to claims arising before the IDEA was amended, effective July 2005, to include a two-year statute of limitations, “the applicable limitations period [is] determined with reference to the most appropriate or analogous state statute of limitations.” Somoza v. N.Y. City Dep’t of Educ., 538 F.3d 106, 114 n. 7 (2d Cir.2008) (internal quotation marks omitted). We detect no error in the district court’s affir-mance of the State Review Officer’s (“SRO”) adoption of the one-year period specified in the New York Human Rights Law. E.H. v. Bd. of Educ. of Shenendehowa Cent. Sch. Dist., Nos. 1:05-CV-972, 1:06-CV-713, 2008 WL 3930028, *8 (N.D.N.Y. Aug. 21, 2008). Plaintiffs do not claim that another state law is more closely analogous.
Nor have plaintiffs shown that the School District failed to advise them of their rights or misled them as to the applicable time limit. Plaintiffs point to a Procedural Safeguards Notice prepared by the New York State Education Department and provided to them by the School District, which states as follows:
You have the right to submit a written complaint.... The alleged violation *159 must have occurred not more than one year prior to the date of the complaint:
* unless the violation is continuing; or
* the complaint is requesting compensation services. This only applies to alleged violations that occurred not more than three years prior to the date of the complaint.
Plaintiffs claim they alleged a continuing violation, and they read this notice to apply a three-year limit in such a case. We are not persuaded. While not a model of clarity, the notice states that the normal limit is one year, and that a three-year limit applies only where “compensation services” are at issue, which plaintiffs do not assert. We therefore affirm the holding of the district court that plaintiffs’ claims based on the 2001-02 and 2002-03 school years are untimely.
2. Free Appropriate Public Education
Plaintiffs contend that in 2003-04 and 2004-05, defendants denied C.H. the “free appropriate public education” (“FAPE”) to which he is entitled under the IDEA. See 20 U.S.C. § 1400(d)(1)(A). We review de novo the district court’s grant of summary judgment, T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 252 (2d Cir.2009), mindful that the IDEA offers no “invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review,” and that courts “lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy,” Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 208, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (internal quotation marks omitted); accord Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 112-13 (2d Cir.2007).
a. Classroom Placement
Plaintiffs contend the School District denied C.H. a FAPE by offering him classroom placements inappropriate to his needs. C.H.’s 2003-04 individualized education program (“IEP”) provided for a 12:1:3 classroom,[1] and his 2004-05 IEP provided for a 12:1:2 classroom and a one-on-one aide. Plaintiffs contend that C.H. required a classroom limited to six students, or, at a maximum, eight, and that such a placement was mandatory under New York regulations, which cap class size at six for students -with “highly intensive” needs “requiring a high degree of individualized attention and intervention,” N.Y. Comp.Codes R. & Regs. tit. 8, § 200.6(h)(4)(ii)(a), and at eight for students with “intensive” needs, id. § 200.6(h) (4) (ii) (b). They cite recommendations for a six-student placement by a psychiatrist, C.H.’s pediatrician, and Dr. Alison Curley, a pediatric neuropsychologist.
Upon a thorough examination of the record, and exercising our “strictly limit[ed]” review, D.F. ex rel. N.F. v. Ramapo Cent. Sch. Dist., 430 F.3d 595, 598 (2d Cir.2005), we identify no error in the ruling of SRO Paul Kelly as to the 2003-04 placement. Application of a Child with a Disability, No. 04-110. SRO Kelly found that C.H.’s needs were not “highly intensive” for purposes of the regulations cited above. Id. at 10 (citing N.Y. Comp.Codes R. & Regs, tit. 8, § 200.6(g)). Notwithstanding the use of the phrase “intensive needs” in an IEP prepared for C.H. on July 18, 2001, see Appellants’ Br. at 10, we defer to SRO Kelly on this question requiring specialized knowledge, see Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. at 208, 102 S.Ct. 3034. We likewise defer to his conclusion, based on the *160 testimony of an independent psychologist and on data regarding other students in the classroom to which defendants proposed to assign C.H., that the six-person classroom requested by plaintiffs would not have been the “least restrictive environment” the statute requires. See Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d at 108.
Nor do we detect error in the ruling of SRO Joseph Frey as to the 2004-05 placement. See Application of a Child with a Disability, No. 05-128. Considering each element of C.H.’s IEP, and noting input from plaintiffs and the approval of clinicians familiar with C.H.’s needs, SRO Frey rejected the claim that C.H. required a 6:1:1 environment. Id. at 11-14. He acknowledged the view of Dr. Curley that a six-student classroom would be “best,” but accurately observed that the IDEA does not require school districts to provide “the ‘best’ possible placement that can be imagined ... so long as the district offers to provide an appropriate education, defined as one which allows the child to receive meaningful educational benefit.” Id. at 14; see Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 130 (2d Cir.1998). Thus we affirm the district court’s holding that the classroom placements proposed for C.H. in the 2003-04 and 2004-05 school years did not violate the IDEA.

b. Parent Participation

Plaintiffs claim defendants barred them from full participation in the development of C.H.’s IEPs, as the IDEA requires.[2] See 20 U.S.C. § 1415(b)(1). The record reflects a robust, if acrimonious, dialogue between school personnel and plaintiffs, as well as plaintiffs’ participation in many meetings aimed at developing educational programming for C.H. Many of the incidents of which plaintiffs complain occurred during the 2001-02 and 2002-03 school years, and are beyond the scope of our review. The remainder are insufficient to demonstrate the denial of the active role to which plaintiffs were entitled. See T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d at 253 (identifying no IDEA violation where parents “meaningfully participated” in development of IEP); Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 193 (2d Cir.2005) (identifying no violation where parents had “numerous opportunities to participate in meetings with respect to the identification, evaluation, and educational placement of the child” (internal quotation marks omitted)). Thus we identify no error, much less one capable of denying C.H. a FAPE.
c. Behavioral Interventions
Plaintiffs claim defendants violated the IDEA by omitting behavioral programming from C.H.’s IEPs. We are unpersuaded. “The IDEA requires that, in developing an IEP for ‘a child whose behavior impedes the child’s learning,’ the school district must ‘consider the use of positive behavioral interventions and supports, and other strategies, to address that behavior.’ ” A.C. ex rel. M.C. v. Bd. of Educ. of Chappaqua Cent. Sch. Dist., 553 F.3d 165, 172 (2d Cir.2009) (quoting 20 U.S.C. § 1414(d)(3)(B)®). Curiously, plaintiffs’ main brief does not challenge the district court’s principal ruling on this issue: that SRO Frey erred in finding that defendants denied C.H. a FAPE when they failed to prepare a required functional behavioral assessment (“FBA”), behavioral intervention plan (“BIP”), or transition plan in a timely fashion. See E.H. v. Bd. *161 of Educ. of Shenendehowa Cent Sch. Dist., 2008 WL 3930028, at *11; Application of a Child with a Disability, No. 05-128, at 9-10. Plaintiffs raise the issue only in their reply brief. Thus it is waived. See Norton v. Sam’s Club, 145 F.3d 114, 117 (2d Cir.1998). What remains is the general claim that C.H.’s IEPs failed to address behaviors with the potential to impede his learning, e.g., his inability to use the toilet, to tolerate change, or to participate in activities with his teacher. With respect to the three areas mentioned, however, as well as other related areas, the 2003-04 and 2004-05 IEPs address C.H.’s needs, techniques his teachers can employ, and skills he should acquire. Thus plaintiffs’ general challenge is without merit.
3. Other Claims
Finally, plaintiffs fault the district court for dismissing their ADA, Rehabilitation Act, and § 1983 claims. Even if we were to conclude that the School District had violated the IDEA, such a violation, without more, would be insufficient to support a claim of disability-based discrimination under the ADA or Section 504 of the Rehabilitation Act. See E.H. v. Bd. of Educ. of Shenendehowa Cent. Sch. Dist., 2008 WL 3930028, at *14. To make out a prima facie case under either of these statutes, a plaintiff must show “(1) that [he] is a qualified individual with a disability; (2) that the defendants are subject to [the relevant statute]; and (3) that [he] was denied the opportunity to participate in or benefit from defendants’ services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability.” Harris v. Mills, 572 F.3d 66, 73-74 (2d Cir.2009). Plaintiffs have adduced no evidence that would support an inference of such prim a facie discrimination. Accordingly, we affirm the dismissal of plaintiffs’ discrimination claims. As for plaintiffs’ § 1983 claim, it lacks any factual basis other than the alleged discrimination, and is likewise dismissed.
We have reviewed plaintiffs’ remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is AFFIRMED.

. This figure denotes the number of students (12), teachers (1), and aides (3).

. Though not discussed in the district court’s opinion, this allegation was included in plaintiffs' complaint. See Compl. ¶ 119.