17-2809
J.R., et al. v. N.Y.C. Dep't of Educ.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of September, two thousand eighteen.

PRESENT:   JOHN M. WALKER, JR.,
           DENNIS JACOBS,
           GUIDO CALABRESI,
               <u>Circuit Judges</u>.

- - - - - - - - - - - - - - - - - - - - -X

J.R., A MINOR WITH A DISABILITY BY HIS PARENTS
J.R. AND S.F.R., S.F.R., INDIVIDUALLY, J.R.,
INDIVIDUALLY,
           <u>Plaintiffs-Appellants</u>,

           **-v.-**                                              17-2809

THE NEW YORK CITY DEPARTMENT OF
EDUCATION,

1

**Defendant-Appellee**,

- - - - - - - - - - - - - - - - - - - - -X

FOR PLAINTIFFS-APPELLANTS:　　GEORGE P. ZELMA, Law Offices of George Zelma; New York, NY.

FOR DEFENDANT-APPELLEE:　　DANIEL MATZA-BROWN, Assistant Corporation Counsel (Devin Slack, of Counsel, on the brief), for Zachary W. Carter, Corporation Counsel of the City of New York; New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Townes, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants J.R. and S.F.R., on their own behalf and on behalf of their child, J.R., appeal from a judgment of the United States District Court for the Eastern District of New York (Townes, J.) dismissing the complaint on summary judgment. Plaintiffs allege that the New York City Department of Education ("DOE") formulated an individualized education plan ("IEP") that failed to provide J.R. a free and appropriate public education ("FAPE"), in violation of the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. The district court affirmed the decision of a state review officer ("SRO"), which had reversed the decision of an impartial hearing officer ("IHO"). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

The IDEA entitles a child with a disability to a FAPE, including special education and related services and conforming to an IEP tailored to meet the student's needs. 20 U.S.C. § 1401. An IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances

2

. . . . [T]he question is whether the IEP is *reasonable*, not whether the court regards it as ideal." Endrew F. v. Douglas Cty. Sch. Dist. RE-1, 137 S. Ct. 988, 999 (2017) (emphasis in original). A parent who believes that the state has failed to provide the child with a FAPE "may pay for private services and seek reimbursement from the [public] school district for expenses that [the district] should have paid all along and would have borne in the first instance had it developed a proper IEP." T.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 252 (2d Cir. 2009) (internal quotation marks omitted).

We conduct "a circumscribed de novo review of a district court's grant of summary judgment in the IDEA context . . . only seek[ing] to independently verify that the administrative record supports the district court's determination that a student's IEP was adequate." M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ., 725 F.3d 131, 138 (2d Cir. 2013). Although "[a] federal court reviewing a dispute over an IEP must base its decision on the preponderance of the evidence," R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 184 (2d Cir. 2012), it must also "give due weight to the administrative proceedings and remain mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy," D.F. ex rel. N.F. v. Ramapo Cent. Sch. Dist., 430 F.3d 595, 598 (2d Cir. 2005). If the IHO and SRO reach conflicting decisions, we "defer to the SRO's decision on matters requiring educational expertise unless [we] conclude[] that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead." R.E., 694 F.3d at 189.

J.R. is a child with speech and language impairments as classified under the IDEA. He attended the West End Day School ("WEDS"), a private school, for three years until the 2012-13 academic year, when he aged out of the school. In June 2013, the committee on special education ("CSE") convened to develop an IEP for J.R. for the 2013-14 academic year. Based on J.R.'s academic needs and goals, the IEP recommended that J.R. be placed in a DOE community school in a 12:1+1 special education class, that is, a class with a maximum of 12 students, one teacher, and one paraprofessional. The IEP also recommended the following special services: four 40-minute sessions per week of speech-language therapy (two individual sessions and two small-group sessions); one 40-minute individual counseling session per week; and two 40-minute small-group counseling sessions per week. J.R.'s parents rejected the IEP and enrolled J.R. at

the Winston School, a private school.  This action seeks tuition reimbursement for the 2013-14 academic year.

**1.** Plaintiffs argue that the SRO decision was insufficiently reasoned and that the IHO decision should be given deference.  We are unpersuaded.

The SRO first identified J.R.'s needs and abilities, noting his "considerable delay in all areas of intellectual functioning" and summarizing the results of various assessments related to intelligence, memory, mathematics, taking directions, reading, writing, and expressive language skills.  App'x 12-13 (internal quotation marks omitted).  The SRO observed that "the student required clarification of directions, and assistance with identifying the main idea of paragraphs, organizing his thoughts on paper, and applying grammar rules." App'x 13.  At the same time, the SRO noted that the June 2013 IEP (consistent with a Mount Sinai psychoeducational report and a WEDS progress report) "described the student as cooperative, respectful, and responsive to support from peers and adults . . . ."  Id.

Based upon these evaluations, the CSE recommended the 12:1+1 placement and related services.  The SRO reviewed the IEP's recommended strategies to address J.R.'s "management needs": "visual prompts and schedules, structured presentation of tasks, instruction presented in segmented chunks, concise directions with accompanying visual supports, and skeleton notes to address the student's lower processing speed."  App'x 13 (internal quotation marks omitted).  The SRO also explained how the CSE considered both more and less restrictive placements for J.R.: the IEP rejected a less restrictive option (a classroom with both a general and special education teacher that serves students with and without IEPs) because it provided "[in]sufficient academic support"; and it rejected placement in a school that serves only students with disabilities as "overly restrictive," observing that neither J.R.'s parents nor his WEDS teachers wanted J.R. to attend a specialized school.  App'x 13 (internal quotation marks omitted); see T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 161 (2d Cir. 2014) (DOE must offer placement in the "least restrictive" appropriate environment.).

The SRO explained that 12:1+1 classes provide an additional adult to help "students 'whose management needs interfere with the instructional process.'"

App'x 13 (quoting 8 NYCRR 200.6[h][4][i]). The SRO then summarized the uncontroverted testimony of DOE psychologist Nesson O'Sullivan, who explained that a 12:1+1 classroom was an appropriate placement because a paraprofessional would assist J.R. in "accessing" the lessons and activities in the classroom and address J.R.'s management needs. Id. O'Sullivan testified that a 12:1+1 placement would provide J.R. with a "supervised and coached semi-structured social situation," in which he could "experiment socially and conversationally, and interpersonally." Id. (internal quotation marks and alteration omitted). The SRO also considered O'Sullivan's explanations as to why a smaller class placement would be inappropriate: J.R. did not engage in "significant interfering behaviors," and the CSE wanted to offer J.R. a "balanced program" with "opportunities for group academics and also group socializing." Id. (internal quotation marks omitted).

Finally, the SRO rejected "the IHO's sua sponte determination" that the recommended pullout sessions for individual counseling and tutoring would exacerbate J.R.'s emotional issues. App'x 14 n. 4. The SRO explained that Plaintiffs had not raised this objection in the complaint, and that "the IHO exceeded [her] jurisdiction by addressing the issue." Id. Moreover, the SRO concluded that the IHO's decision was not supported by the evidence: the CSE participants, including O'Sullivan and J.R.'s teachers, all agreed that pullout services were appropriate. Id.

The SRO determined that the DOE had sustained its burden to show that the IEP was reasonably calculated to provide J.R. with a FAPE for the 2013-14 academic year. As the district court concluded, the evidentiary record supports the SRO's decision: there is no dispute that the recommended placement was a "small, special education program[]" with "intensive, individualized support," as the Mount Sinai report recommended, Confidential App'x 174; and O'Sullivan testified in detail as to how the IEP was tailored to meet J.R.'s individual needs, testimony that Plaintiffs did not dispute with contradictory testimony or exhibits. Accordingly, we find no support for Plaintiffs' argument that the SRO decision was inadequately reasoned, and we therefore give deference to the SRO decision.

**2.** Plaintiffs argue that the IEP was not reasonably calculated to confer educational benefits on J.R. because it provided insufficient 1:1 teacher reinforcement of the materials taught. Plaintiffs cite the WEDS progress report,

which stated that "one-one-one time with the teacher [was] crucial" for J.R. Confidential App'x 180. Plaintiffs also contend that the district court misrepresented the record by omitting the word "teacher[s]" from the Mount Sinai recommendation that "check-ins" from teachers would "likely benefit" J.R.'s verbal comprehension. App'x 47.

However, these documents do not specify the nature, duration, or extent of teacher support required, or explain why other personnel (e.g., a classroom paraprofessional or speech therapist) would be unable to offer sufficient support. The IDEA requires an *appropriate* education, not one that provides "everything that might be thought desirable by loving parents." Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 132 (2d Cir. 1998) (internal quotation marks omitted). We have explained that the adequacy of 1:1 support from non-teacher personnel, as opposed to 1:1 teacher support, "is precisely the kind of educational policy judgment to which we owe the state deference if it is supported by sufficient evidence." R.E., 694 F.3d at 192. The record shows that the SRO considered all the evidence, including O'Sullivan's testimony, and the WEDS and Mount Sinai reports, and concluded that the IEP provided sufficient individualized support to enable J.R. to make meaningful and appropriate educational progress. That policy judgment is entitled to the Court's deference.

Plaintiffs emphasize that the DOE funded J.R.'s private school tuition at WEDS until 2012-13 and the Winston School after 2013-14, suggesting "no public program was reasonably calculated to confer educational benefits [J.R.]" Br. of Appellants 28. But the DOE's funding of J.R.'s schooling in other years is irrelevant: "the adequacy vel non of an IEP . . . is to be judged on its own terms." M.C. v. Voluntown Bd. of Educ., 226 F.3d 60, 67 (2d Cir. 2000). Whether the DOE offered J.R. an appropriate placement in other years "makes no difference" to the question of whether the IEP provided a FAPE in 2013-14. Id.

Finally, Plaintiffs argue that the district court erred in deferring to O'Sullivan's testimony. They rely on A.M. v. New York City Department of Education, 845 F.3d 523 (2d Cir. 2017), in which we rejected reliance on a DOE psychologist's recommendation as to appropriate educational methodology because it was contradicted by the "clear consensus of the substance of the evaluative materials present at the CSE meeting and the views of [the student's] evaluators and educational instructors . . . ." Id. at 545. But here, there is no clear

consensus that only 1:1 teacher support would allow J.R. to make educational progress: the only evidence as to the specific amount of individual support J.R. required came from O'Sullivan; the WEDS report states that J.R. "continues to need a small learning environment supported by individual attention," App'x 44 (internal quotation marks omitted); and the Mount Sinai report recommended "intensive, individualized support as found in small, special education programs," App'x 46 (internal quotation marks omitted). Accordingly, the district court and the SRO did not err in crediting O'Sullivan's testimony.

The record evidence supports the district court's determination that the IEP was reasonably calculated to provide J.R. with a FAPE. We have considered Plaintiffs' remaining arguments and conclude that they are without any merit. The judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK