14-1405
*R.B. v. N.Y.C. Dep't of Educ.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 19th day of March, two thousand fifteen.

Present:    ROBERT A. KATZMANN,
                          *Chief Judge*,
              JOHN M. WALKER, JR.,
              DENNY CHIN,
                          *Circuit Judges*.

_____

R.B., individually and on behalf of D.B., M.L.B.,
individually and on behalf of D.B.,

                      *Plaintiffs-Appellants*,

                      v.                                              No. 14-1405-cv

NEW YORK CITY DEPARTMENT OF EDUCATION,

                      *Defendant-Appellee.*

_____

For Plaintiffs-Appellants:              GARY S. MAYERSON (Maria C. McGinley, on the brief),
                                                      Mayerson & Associates, New York, NY.

For Defendant-Appellee:                JANET L. ZALEON *for* Zachary W. Carter, Corporation
                                                      Counsel of the City of New York, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Nathan, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,**

and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Plaintiffs-Appellants R.B. and M.L.B., the parents of D.B., a child diagnosed with autism, appeal from a March 28, 2014 judgment following a March 26, 2014 order (Nathan, *J.*), which granted summary judgment to the defendant on the parents' claim for private-school tuition reimbursement under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1482. The district court order reviewed an October 17, 2012 decision of a State Review Officer (the "SRO"), which itself reviewed a February 28, 2012 decision of an Impartial Hearing Officer ("IHO") who first heard the parents' claim that their son's individualized education program ("IEP") was neither procedurally nor substantively appropriate. We assume the parties' familiarity with the underlying facts, procedural history, and the issues on appeal.

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). A school district achieves compliance with the requirement of providing a free appropriate public education to its special-needs students through an annual IEP that is developed in compliance with the IDEA's procedural requirements and is substantively "reasonably calculated to enable the child to receive educational benefits." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 207 (1982). Public school districts must provide a "basic floor of opportunity" for receiving an education. *Id.* at 200. "What the statute guarantees is an appropriate education, not one that provides everything that might be thought desirable by loving

2

parents." *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 132 (2d Cir. 1998) (internal quotation marks omitted). The adequacy of an IEP is evaluated in two steps. "First, we examine whether the state has complied with the procedures set forth in the IDEA. Second, we consider whether the proposed IEP is substantively appropriate in that it is reasonably calculated to enable the child to receive educational benefits." *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (per curiam) (internal quotation marks and citation omitted).

We review de novo a district court's grant of summary judgment, which, in an IDEA case, "involves more than looking into disputed issues of fact; rather, it is a pragmatic procedural mechanism for reviewing administrative decisions." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 184 (2d Cir. 2012) (internal quotation marks omitted). We recognize that "[t]he role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed." *T.P.*, 554 F.3d at 252 (internal quotation marks omitted). The IDEA requires a district court to "base its decision on the preponderance of the evidence, [but the Court] must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Id.* (internal quotation marks, brackets, and citations omitted). Accordingly, "[t]he responsibility for determining whether a challenged IEP will provide a child with an appropriate public education rests in the first instance with administrative hearing and review officers," and we defer to their expertise on education policy. *Walczak*, 142 F.3d at 129. "Deference is particularly appropriate when the state officer's review 'has been thorough and careful,' but still we do not 'simply rubber stamp administrative decisions.' " *R.E.*, 694 F.3d at 184 (quoting *Walczak*, 142 F.3d at 129).

3

First, we agree with the district court and the SRO that the IEP's development was procedurally adequate, and that any inadequacy did not "impede[] the child's right to a free appropriate public education[,] significantly impede[] the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child[,] or cause[] a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii). The parents contend that, in developing the IEP, the local committee on special education should have conducted a functional behavior analysis and developed a behavior intervention plan based on that analysis. Although they raised this argument in their initial filing, the parents never pursued it before the IHO, SRO, or district court, and, as a result of that decision, no administrative record was made from which we might develop a reasoned view of the merits. Because this "is precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers," *A.C. ex rel. M.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 172 (2d Cir. 2009) (internal quotation marks omitted), we decline to consider it in the first instance.

The parents further contend that they were denied meaningful participation in the selection of the school that their son would attend. This claim is also waived because the parents did not include it in their initial filing with the school district. *See R.E.*, 694 F.3d at 187 n.4. But even if we were to consider this contention, it lacks merit because parents are guaranteed only the opportunity to participate in the decision about a child's "educational placement," *see* 20 U.S.C. § 1414(e), which "refers to the general educational program—such as the classes, individualized attention and additional services a child will receive—rather than the 'bricks and mortar' of the specific school," *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009);

4

*see also* Assistance to States for the Education of Children with Disabilities, 64 Fed. Reg. 12406, 12594 (Mar. 12, 1999).

The development of the IEP was not unblemished. We agree with the district court and the SRO that the IEP should have provided for parent counseling and training. But "because school districts are required by [N.Y. Comp. Codes R. & Regs., tit. 8,] section 200.13(d) to provide parent counseling, they remain accountable for their failure to do so no matter the contents of the IEP," *R.E.*, 694 F.3d at 191, so this omission, although a procedural violation, did not deny the student a free appropriate public education. *See* 20 U.S.C. § 1415(f)(3)(E)(ii).

Second, we agree with the district court and SRO that the IEP was substantively adequate. The parents object to the IEP's recommended placement of their son in a classroom with six students, one teacher, and one paraprofessional (6:1:1), preferring instead the classroom ratio he had in private school of eight students, one teacher, and three paraprofessionals (8:1:3). At the February 9, 2011 meeting of the local committee on special education at which a draft IEP was shared with and amended in response to feedback from the student's mother, she expressed concern that the 6:1:1 placement would be insufficiently supportive of her son, who had, in the 8:1:3 classroom, a ratio of two students to each adult. Likewise, in their initial filing, the parents contended that the 6:1:1 placement recommendation failed to provide their son with the "smaller, more supportive program" that he needed. In response to this concern, the IEP was amended to provide for a full-time transitional paraprofessional to help the student transition from private to public school by maintaining the 2:1 student-to-adult classroom ratio that he had before.

On appeal, the parents attack this placement not as insufficiently supportive but as *too* supportive, a crutch that vitiates their son's right to be educated in the least restrictive

5

environment. *See* 20 U.S.C. § 1412(a)(5)(A). This argument is both waived and unpersuasive. The requirement that students be educated in the least restrictive environment applies to the type of classroom setting, not the level of additional support a student receives within a placement, *see* 34 C.F.R. § 300.114, with the goal of integrating children with disabilities into the same classrooms as children without disabilities. Here, the parents agreed with their son's recommended placement in a special class within a special school, and the additional support provided by the 1:1 paraprofessional did not deny their son the least restrictive environment.

Finally, we join the district court and SRO in declining to entertain the parents' speculation that the "bricks-and-mortar" institution, *T.Y.*, 584 F.3d at 419 (hyphens supplied), to which their son was assigned would have been unable to implement his IEP. *See R.E.*, 694 F.3d at 195 ("Speculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement.").

We have considered all of the parents' remaining arguments and find them to be without merit. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK
