16-1952-cv
*R.B., et al. v. N.Y.C. Dep't of Educ.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**<u>SUMMARY ORDER</u>**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of April, two thousand seventeen.

PRESENT:    GUIDO CALABRESI,
            DENNY CHIN,
            RAYMOND J. LOHIER, JR.,
                        *Circuit Judges.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

R.B., individually, M.L.B., individually, R.B., on behalf of son, D.B., A MINOR, M.L.B., on behalf of son, D.B., A MINOR,

                        *Plaintiffs-Appellants*,

    v.                                                16-1952-cv

NEW YORK CITY DEPARTMENT OF EDUCATION,
                        *Defendant-Appellee*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFFS-APPELLANTS:        GARY S. MAYERSON (Jean Marie Brescia, *on the brief*), Mayerson & Associates, New York, New York.

FOR DEFENDANT-APPELLEE:        JULIE STEINER (Pamela Seider Solgow, *on the brief*), *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, New York.

Appeal from the United States District Court for the Southern District of New York (Cote, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-appellants R.B. and M.L.B., the parents of D.B., a teenager diagnosed with autism (the "Parents"), appeal a May 19, 2016 judgment of the district court entered pursuant to a May 19, 2016 opinion and order that granted summary judgment in favor of defendant-appellee the New York City Department of Education (the "Department"), denying reimbursement for D.B.'s private school tuition under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*.  The question presented is whether the Department provided D.B. with a "free appropriate public education" ("FAPE") through an Individualized Education Program ("IEP"), as mandated by the IDEA.  *Id.* § 1414(d)

It is undisputed that the IDEA required the Department to provide D.B. with a FAPE and that pursuant to this obligation it prepared IEPs for the 2013-14 and 2014-15 school years in consultation with the Parents.  Unsatisfied with those IEPs, the

2

Parents enrolled D.B. in a private school that specializes in educating children with autism and commenced a state administrative proceeding before an Impartial Hearing Officer ("IHO"), seeking tuition reimbursement pursuant to 20 U.S.C. § 1412(a)(10)(C).[1]

The IHO held a hearing over six days in October and November 2014. On January 23, 2015, the IHO found that IEPs for both school years were insufficient because (1) the recommended vocational and transition services were deficient; (2) the Department did not give the Parents the requisite written notice for the 2013-2014 year, (3) the long-term and short-term goals specified in the IEPs were insufficiently measurable, (4) the IEPs were impermissibly predetermined, (5) the recommended classroom student to educator ratio would not allow D.B. to progress in social interactions, (6) the teaching methodology in such classrooms would be ineffective for D.B., and (7) the recommended school sites were ill-equipped to execute the IEPs' requirements. The IHO found that the Parents cooperated with the Department throughout the IEP development process and that the chosen private school was suitable. Therefore, the IHO concluded that the Department was obligated to reimburse D.B.'s tuition for the 2013-2014 and 2014-2015 school years.

---

[1] The Parents previously (but unsuccessfully) have sought reimbursement every year since 2009. *See, e.g., R.B. v. N.Y.C. Dep't of Educ.*, 15 F. Supp. 3d 421 (S.D.N.Y. 2014), *aff'd sub nom. R.B. ex rel. D.B. v. N.Y.C. Dep't of Educ.*, 603 F. App'x 36, 38-40 (2d Cir. 2015) (affirming decision of SRO for 2011-2012 school year).

The Department appealed the IHO's ruling to a State Review Officer ("SRO"). On May 4, 2015, the SRO determined that the IEPs were sufficient and offered D.B. a FAPE. The SRO concluded, *inter alia*, that (1) the IEPs offered appropriate postsecondary goals and transition services, (2) neither IEP was predetermined, (3) omitting written notice to the parents and failing to assess D.B.'s vocational skills were mere procedural violations that did not deny D.B. a FAPE, (4) the IEPs' short and long term goals were adequate, (5) the proposed classroom student to educator ratio was reasonable, and (6) the Department did not need to specify a particular teaching methodology ahead of time. Therefore, the SRO concluded that the Department had offered D.B. a FAPE for the 2013-2014 and 2014-2015 school years and thus no tuition reimbursement was required.

On August 11, 2015, the Parents filed a complaint in the district court, alleging that D.B. was denied a FAPE. The parties filed motions for summary judgment in December 2015 and January 2016. On May 19, 2016, the district court granted summary judgment in favor of the Department. The Parents timely appealed.

We review the district court's grant of summary judgment *de novo*. *Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 385 (2d Cir. 2014). In reviewing the state administrative proceeding under the IDEA, we "engage in an independent, but circumscribed, review, 'more critical than clear-error review but well short of complete *de novo* review.'" *T.K. v. N.Y C. Dep't of Educ.*, 810 F.3d 869, 875 (2d

4

Cir. 2016) (quoting *C.F. ex re. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014)). Factual issues are decided based on the preponderance of the evidence, but state administrative proceedings must be given "due weight." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206 (1982); *see also* 20 U.S.C. § 1415(i)(2)(C)(iii). When, as here, "an IHO and SRO reach conflicting conclusions, '[w]e defer to the final decision of the state authorities,' that is, the SRO's decision." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012) (alteration in original) (quoting *A.C. ex rel. M.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009)). Indeed, "a court must defer to the SRO's decision on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead." *Id.*; *accord M.H. v. N.Y. City Dep't of Educ.*, 685 F.3d at 246 (noting that it is appropriate to consider IHO's decision "where the SRO rejects a more thorough and carefully considered decision of an IHO").

The IDEA was enacted "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). The "statute guarantees . . . an appropriate education, not one that provides everything that might be thought desirable by loving parents." *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 132 (2d Cir. 1998) (citation and internal quotation marks omitted). A

school district meets its obligations to provide a FAPE by creating an IEP that is developed in compliance with the IDEA's procedural and substantive requirements. *See Rowley*, 458 U.S. at 206-07.  Accordingly, our review of the adequacy of an IEP proceeds in two steps.  "First, we examine whether the state has complied with the procedures set forth in the IDEA" and applicable regulations.  *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (per curiam).  Second, we consider whether, substantively, the IEP is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."  *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999 (2017).  As to this latter requirement, the IEP need not bring the child to grade-level achievement, but it must aspire to provide more than *de minimis* educational progress.  *Id.* at 1000-01.

As is relevant to this appeal, the IDEA provides that "beginning not later than the first IEP to be in effect when the child is 16," an IEP must include "postsecondary goals based upon age appropriate transition assessments related to training, education, employment, and, where appropriate, independent living skills" and "the transition services (including courses of study) needed to assist the child in reaching those goals."  20 U.S.C. § 1414(d)(1)(A)(i)(VIII)(aa)-(bb).[2]  It is undisputed that D.B.'s 2013-14 and 2014-15 IEPs were subject to this requirement.

---

[2]     New York state regulations require that such postsecondary goals and transition services be provided for in the first IEP in effect when the child is fifteen.  *See* N.Y. Comp. Codes R. & Regs., tit. 8, § 200.4(d)(2)(ix).

On appeal, the Parents principally argue that the Department was required by state and federal regulations to assess D.B. *in person* and its failure to do so undermined the development of IEPs that were reasonably calculated to provide the postsecondary goals and transition services required by 20 U.S.C. § 1414(d)(1)(A)(i)(VIII)(aa)-(bb).[3]  Accordingly, the Parents contend they are entitled to tuition reimbursement under 20 U.S.C. § 1412(a)(10)(C).  We are not persuaded.

Under the IDEA, parents are entitled to reimbursement only if the alleged procedural violations (1) "impeded the child's right to a free appropriate public education," (2) "significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child," or (3) "caused a deprivation of educational benefits."  20 U.S.C. § 1415(f)(3)(E)(ii)(I)-(III); *see also A.M. v. N.Y.C. Dep't of Educ.*, 845 F.3d 523, 535 (2d Cir. 2017).  In other words, "parents must articulate how a procedural violation resulted in the IEP's substantive inadequacy or affected the decision-making process." *Id.* (quoting

---

[3]      For example, the Parents argue that New York state regulations require the Department to conduct a "student interview[] to determine vocational skills, aptitudes and interests."  N.Y. Comp. Codes R. & Regs., tit. 8, § 200.4(b)(6)(viii).

The Parents also contend that the Department violated 34 C.F.R. § 300.321, which requires that a school district constitute an "IEP Team for each child with a disability," whose members must include, *inter alia*, the child's parents, an appropriate teacher, a school district representative, and "[w]henever appropriate, the child with a disability." *Id.* § 300.321(a)(1)-(7). When the purpose of a given IEP Team meeting is to set "postsecondary goals for the child and the transition services needed to assist the child in reaching those goals," the school district is required to invite the child to attend the meeting. *Id.* § 300.321(b)(1).  If the child does not attend, the school district "must take other steps to ensure the child's preferences and interests are considered." *Id.* § 300.321(b)(2).

*M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 139 (2d Cir. 2013)).  Here, even assuming *arguendo* that the failure to conduct an in person assessment of D.B. violated applicable state or federal regulations, the lack of an in person assessment did not impede D.B.'s right to a FAPE, significantly impede the Parents' opportunity to participate in the decisionmaking process, or deprive D.B. of educational benefits.

The Department explained in the state administrative proceeding that it did not conduct an in person assessment of D.B. because the Parents submitted a privately obtained substitute report and the "standard vocational assessment required a higher level of reading skills than the student possessed."  App. 754 (internal quotation marks omitted).  Moreover, the Department conducted a vocational interview with the Parents and consulted with D.B.'s private school teachers about his progress, goals, and preferred learning environment.  It also invited D.B. to attend meetings in which postsecondary goals and transitions services were discussed, but the Parents declined to bring him because they felt that he could not sit through the meetings.  The Department then incorporated what it learned from these consultations into the IEPs, which state that D.B. "require[d] support in clothing care, meal preparation, household management and consumer skills," App. 464, and that his parents want him to seek employment after high school.  The IEPs also identify "transition activities" to enable D.B. to meet these goals, including, for example, trips "into the community to purchase items independently and get the correct change," "learn[ing] appropriate phone . . . and

8

workplace etiquette," and "learn[ing] to make a budget and shop for his own food and other needed items within that budget." App. 470. Accordingly, we agree with the district court and the SRO that the IEPs were reasonably calculated to provide D.B. with the postsecondary goals and transition services required by the IDEA. Even assuming *arguendo* that the failure to assess D.B. in person was a procedural violation, we conclude that the Parents have not shown an impediment to D.B.'s right to a FAPE, a significant impediment to their opportunity to participate in the decisionmaking process, or a deprivation of educational benefits. Therefore, we affirm the SRO's -- and the district court's -- decision that the Parents are not entitled to reimbursement of D.B.'s private school tuition.

We have reviewed the Parents' remaining arguments and conclude they are without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9