24-2852-cv
*Ambrister v. Banks*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of September, two thousand twenty-five.

PRESENT:
>> RICHARD C. WESLEY,
>> JOSEPH F. BIANCO,
>> BETH ROBINSON,
>>> *Circuit Judges.*

---

RHONDA AMBRISTER, as legal guardian of R.D. and individually,

>> *Plaintiff-Appellant,*

>> v.                                                             24-2852-cv

DAVID C. BANKS, in his official capacity as Chancellor of New York City Department of Education, NEW YORK CITY DEPARTMENT OF EDUCATION,

>> *Defendants-Appellees.*

---

FOR PLAINTIFF-APPELLANT:              Rory J. Bellantoni, Brain Injury Rights Group, Ltd., New York, New York.

FOR DEFENDANTS-APPELLEES:             KARIN WOLFE, Assistant Corporation Counsel (Richard Dearing and Susan Paulson, *on the brief*), *for* Muriel Goode-

Trufant, Corporation Counsel of the City of New York, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Jessica G. L. Clarke, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on September 27, 2024, is **AFFIRMED**.

Plaintiff-Appellant Rhonda Ambrister, individually and as the guardian of R.D., appeals from the judgment of the district court, which granted summary judgment to Defendants-Appellees David C. Banks, in his official capacity as Chancellor of the New York City Department of Education, and the New York City Department of Education ("DOE"), and denied Ambrister's cross-motion for summary judgment. Ambrister brought the instant action, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and related laws and regulations, seeking, *inter alia*, full funding of R.D.'s tuition at a private school called the International Institute for the Brain ("iBrain") for the 2021–2022 and 2022–2023 school years on the basis that Appellees failed to provide R.D. with a free appropriate public education ("FAPE"). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

"We review *de novo* the district court's grant of summary judgment in an IDEA case." *A.C. ex rel. M.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009). This review is "circumscribed" and "in fact only seeks to independently verify that the administrative record supports the district court's determination regarding the sufficiency of the state's educational decisions." *W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 927 F.3d 126, 143 (2d Cir. 2019) (internal quotation marks and citation omitted).

2

In this "independent review" of the administrative record, federal courts give "due weight" to the proceedings below and are "mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 240 (2d Cir. 2012) (internal quotation marks and citation omitted). However, "deference is not warranted" on "issues of law, such as the proper interpretation of the federal statute and its requirements." *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005) (alteration adopted) (internal quotation marks and citations omitted).

Under what is known as the *Burlington/Carter* test, a guardian may receive reimbursement for the costs of tuition at a private school if (1) the DOE failed to offer the student a FAPE, (2) the guardian's chosen school was appropriate, and (3) the equities favor the guardian's claim. *See Ferreira v. Aviles-Ramos*, 120 F.4th 323, 329 (2d Cir. 2024) (discussing *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7 (1993) and *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359 (1985)). To determine whether a student was improperly denied a FAPE, we assess both the procedural and substantive adequacy of the individual education program ("IEP") provided. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206–07 (1982). Pursuant to New York Education Law § 4404, the DOE bears the burden at the initial stage of the administrative proceedings to demonstrate the appropriateness of its proposed IEP. *See* N.Y. Educ. Law § 4404(1)(c) ("The [DOE] . . . shall have the burden of proof, including the burden of persuasion and burden of production, in any . . . impartial hearing . . . .").[1] On appeal,

---

[1] The Supreme Court in *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49 (2005) held that "[t]he burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief." *Id.* at 62. The Court declined to answer whether states' laws may override this default rule. *See id.* We too have repeatedly declined to answer this question. *See, e.g.*, *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 225 n.3 (2012); *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 184–85 n.2 (2d Cir. 2012). Again, we need

3

Ambrister contends that R.D. was denied a FAPE because her IEP was procedurally and substantively inadequate, and thus full tuition reimbursement for iBrain is appropriate. For the reasons set forth below, we disagree.

## I. Procedural Adequacy of FAPE

Ambrister contends that the IEP was procedurally inadequate because the DOE failed to timely provide R.D.'s school assignment at the Horan School, a District 75 school for children with special needs. However, we conclude that this procedural inadequacy does not amount to the denial of a FAPE. "[N]ot every procedural error will render an IEP legally inadequate." *M.H.*, 685 F.3d at 245. Indeed, a procedural violation of IDEA or its implementing regulations may rise to the level of the denial of FAPE only if it: (1) impeded the student's right to a FAPE; (2) "significantly impeded" the guardian's opportunity to participate in the decision-making process regarding the provision of a FAPE; or (3) "caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii).

Ambrister contends the untimely notice "deprived [her] of relevant information necessary to participate in the decision-making process." Appellant's Br. at 20. The district court concluded that the March 30, 2022 School Location Letter and Prior Written Notice were untimely in light of the February 11, 2022 IEP issuance date and February 21, 2022 IEP implementation date. However, the district court nonetheless concluded that this procedural defect did not deprive Ambrister of an opportunity to participate in the decision-making process because: (1) Ambrister

---

not address that question because the administrative decisionmakers "concluded that the IEP was proper, and the courts are bound to exhibit deference to that decision." *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 135 n.1 (2d Cir. 2013) (alteration adopted) (internal quotation marks and citation omitted). Moreover, "the burden of demonstrating that the respective [administrative decisionmakers] erred is properly understood to fall on plaintiffs" and "which party bore the burden of persuasion in the state review scheme is only relevant if the evidence was in equipoise." *Id.* (internal quotation marks and citation omitted). As shown below, the evidence is not in equipoise.

4

"already knew of R.D.'s 2021–2022 school placement at the Horan School at the end of the 2020–2021 school year" and (2) Ambrister "fail[ed] to demonstrate, or even argue, that she would have acted differently had she been notified of the school placement one month earlier." *Ambrister v. Banks*, No. 23-cv-2746 (JGLC) (BCM), 2024 WL 4326933, at *4 (S.D.N.Y. Sept. 27, 2024).

For substantially the same reasons articulated by the district court, we agree. Even on appeal, Ambrister has not articulated how she was deprived of an opportunity to participate in the decision-making process by the delayed notice. *See C.S.*, 990 F.3d at 162 ("When parents rely on procedural violations to establish a school district's denial of a FAPE, they must articulate how a procedural violation . . . affected the decision-making process." (internal quotation marks and citation omitted)). The regulations implementing IDEA require that the DOE have an IEP in place for all eligible students at the beginning of each school year. *See* 34 C.F.R. § 300.323(a). In June 2021, well before the 2021–2022 school year began, Ambrister received notice of R.D.'s IEP and placement at the Horan School for the upcoming year. Ambrister visited the Horan School after receiving that placement and decided to keep R.D. at iBrain instead of enrolling her at the Horan School. Although the IEP may have changed in February 2022 and the DOE could have amended its school recommendation in light of these changes, it did not do so. Therefore, at the time the DOE revised R.D.'s IEP in February 2022, R.D. already had a pre-existing placement at the Horan School for that year, and Ambrister had already considered and rejected that school for the entirety of the 2021–2022 school year.

Further, Ambrister does not explain what she would have done differently had the DOE informed her in February, rather than in March, that it was continuing the Horan School placement for the remainder of the year. To the contrary, Ambrister's Due Process complaint categorically objected to *any* District 75 school (including the Horan School) before she received R.D.'s

5

placement letter, and thus, "there is no suggestion in the record that [Ambrister] would have altered [her] placement decision" had she received earlier notice of the school location. *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 382 (2d Cir. 2003). In sum, we agree with the district court that the untimely notice of the school placement did not deprive Ambrister of an opportunity to participate in the decision-making process, and thus, the procedural error did not amount to the denial of a FAPE.[2]

## II.     Substantive Adequacy of FAPE

Ambrister next contends that the IEP was substantively inadequate because: (1) it failed to provide music therapy, hearing education services, or vision education services; (2) the Horan School was an inadequate placement due to the lack of dedicated areas for the provision of certain services and air conditioning in particular areas; and (3) the Horan School could not implement the IEP due to a lack of necessary staff and students with similar needs. We are unpersuaded.

To be substantively adequate, an IEP must be "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 207. "IDEA does not itself articulate any specific level of educational benefits that must be provided through an IEP." *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 130 (2d Cir. 1998). Rather, "[a]n appropriate public

---

[2] Ambrister also argues the IEP was procedurally inadequate because the DOE predetermined that it would not offer music therapy to any students, which thereby denied her the ability to meaningfully participate in the IEP process. *See T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 253 (2d Cir. 2009) (explaining that a failure to "have an open mind" as to whether certain services "might be appropriate in some cases" can constitute the denial of a "meaningful participation in the IEP process"). As a threshold matter, we note that this predetermination argument was not properly raised in Ambrister's Due Process complaint, as required by IDEA. *See* 20 U.S.C. § 1415(f)(3)(B) ("The party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the [due process complaint], unless the other party agrees otherwise."); *see also R.E.*, 694 F.3d at 188 ("[P]arents are precluded in later proceedings from raising additional defects in the IEP that they should have raised from the outset, thus giving the school district a chance to cure the defects without penalty."). In any event, we agree with the district court that there was insufficient evidence "that the DOE ha[d] made a policy-level determination dismissing music therapy" and that the requisite "procedure was satisfied when [Ambrister] was given adequate opportunity to discuss music therapy with the DOE during a phone call and numerous IEP meetings." *Ambrister*, 2024 WL 4326933, at *4.

6

education under IDEA is one that is likely to produce progress, not regression." *Id.* (internal quotation marks and citation omitted); *see also Rowley*, 458 U.S. at 203 (explaining that a student must simply "benefit educationally" from the education provided).

To the extent Ambrister contends that the IEP was substantively inadequate because it did not include music therapy, hearing education services, or vision education services, we agree with the district court's conclusion that, based on the administrative decisionmakers' well-reasoned determination, such services were not necessary for an adequate education plan here, particularly when the goals of these services were sufficiently addressed by other services already provided by the IEP. *See Cruz v. Banks*, 134 F.4th 687, 694 (2d Cir. 2025) (concluding that "the goals of music therapy were sufficiently accomplished through other services recommended in the IEP[]" and the appellant "offer[ed] no evidence that music therapy was necessary for a FAPE"). For example, the IEP set a goal of improved communication to be achieved through sign language support and provided five 60-minute individual speech-language therapy sessions per week. It further provided for improved visual tracking, focus, movement, and self-care through certain physical and occupational therapy exercises, with five 60-minute occupational therapy sessions and four 45-minute physical therapy sessions per week. The district court correctly noted that these goals largely overlapped with the goals sought to be accomplished through music therapy, hearing education services, and vision education services, and thus, even assuming these goals were necessary to achieve educational benefits, the IEP was "reasonably calculated" to provide them. *Rowley*, 458 U.S. at 207. Indeed, although R.D. may have benefited from the services Ambrister identifies, an IEP is "not required to furnish every special service necessary to maximize each [disabled] child's potential." *Grim*, 346 F.3d at 379 (alterations adopted) (internal quotation marks and citation omitted); *see also Cruz*, 134 F.4th at 694 ("The IDEA guarantees an appropriate

7

education, not one that provides everything that might be thought desirable by loving parents." (alteration adopted) (internal quotation marks and citations omitted)).

Ambrister also asserts that the Horan School is a substantively inadequate placement due to (1) the lack of air conditioning in certain areas and separate facilities for the provision of particular services and (2) the inability to meet the IEP's requirements, namely due to a lack of sufficient staffing and students with needs similar to those of R.D. We agree with the district court that Ambrister's first argument was not properly exhausted in the administrative proceedings and her second argument is unpersuasive on the merits.

The district court declined to reach Ambrister's arguments regarding the air conditioning and adequacy of separate service areas at the Horan School because these issues were not raised in the initial Due Process complaint and Ambrister did not provide any explanation for her failure to present them. We discern no basis to disturb the district court's decision not to address these unexhausted arguments. *See T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 170 (2d Cir. 2014) (explaining that failing to raise an argument in a Due Process complaint amounts to a forfeiture pursuant to 20 U.S.C. § 1415(f)(3)(B)).

With respect to Ambrister's contention that the Horan School could not implement the IEP because the school would not have had sufficient staff to provide the services in the IEP and R.D., who has cerebral palsy, would have been grouped with students with autism, this argument fails because "[s]peculation that [a] school . . . will not adequately adhere to the IEP is not an appropriate basis for unilateral placement" at a different school. *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 195 (2d Cir. 2012). Our evaluation of an IEP's substantive adequacy is limited to "the placement and services specified in the written plan," *id.* at 187, because "it is speculative to conclude that a school with the capacity to implement a given student's IEP will simply fail to adhere to that plan's

8

mandates," *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 244 (2d Cir. 2015) (per curiam). Although we have held that a guardian may "bring challenges based on the assigned school's actual, and non-speculative, inability to comply with the IEP without first enrolling their child in the deficient school," the record indicates that the Assistant Principal at the Horan School attested that the school would be able to implement R.D.'s IEP and would contract with the appropriate service providers if necessary to ensure that the IEP would be implemented. *J.C. v. N.Y.C. Dep't of Educ.*, 643 F. App'x 31, 33 (2d Cir. 2016) (summary order) (citing *M.O.*, 793 F.3d at 244). Moreover, it is well-settled that "grouping evidence is *not* the kind of non-speculative retrospective evidence that is permissible." *Id.* Thus, because the Horan School had the capacity to implement the IEP, as outlined by the administrative decisionmakers and the district court, Ambrister's staff availability and grouping claims are entirely speculative. In sum, the district court correctly determined that the FAPE was substantively adequate.

\*                    \*                    \*

We have reviewed Ambrister's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

9